Rennie HEMPHILL, by and through her guardian, Charles F. BURNS, Appellant,

v.

Rosa Mae HEMPHILL et al., Respondents.

No. 46547.

Supreme Court of Missouri,

Division No. 1.

Sept. 8, 1958.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 13, 1958.

Richart & Titus, Joplin, for appellant.

Emerson Foulke, Joplin, Clarence Craig, Joplin, for Rosa Mae Hemphill and Rosa Mae Hemphill, Administratrix.

Seiler, Blanchard & Van Fleet, Joplin, for I. J. Albright and First State Bank of Joplin.

Max Patten, Joplin, for Merlyn C. Perkins and Jennett Perkins.

Ben F. Putman, Joplin, for John L. Gernandt and Florence Gernandt.

Stanley P. Clay, Joplin, for Henry Polk Lowenstein, Jr., Trustee, and Prudential Ins. Co.

HOLMAN, Commissioner.

██ Plaintiff, Rennie Hemphill, is an insane person residing in the State of Oklahoma. She instituted this action by and through Charles F. Burns who is alleged to have been appointed as plaintiff's guardian on January 27, 1956, by the county court of Ottawa County, Oklahoma, and to have duly qualified as such. In the first count of her petition she sought to have the court declare null and void a Missouri divorce decree obtained by her husband, Roy Hemphill, in 1942, and that she be declared to be his lawful widow. The relief sought in the second count is for an accounting and other relief relating to the personal assets in the estate of

Roy Hemphill, now deceased, and a decree establishing the interests of plaintiff and defendants in the real estate owned by said decedent at the time of his death. Plaintiff has appealed from the judgment of the court dismissing her petition upon the motions of various defendants which alleged as grounds therefor (1) "that plaintiff, a foreign guardian, has not the legal capacity to prosecute this action," and (2) because the petition fails to state a claim upon which the relief prayed for can be granted. Since the petition sought an adjudication as to the interests of the parties in certain real estate, we have appellate jurisdiction. Article V, Section 3, Constitution of Missouri, 1945, V.A.M.S.

█ In regard to the first point specified in the motions to dismiss we have the view that under the provisions of Section 475.335, Laws of Mo.1955, p. 385, Vol. 26A V.A.M.S., which became effective January 1, 1956, a nonresident guardian of a nonresident ward may maintain an action of this nature in the courts of this state. While that section seems to be limited in its application to actions for the recovery of property of the ward, we think it apparent that such is the ultimate purpose of the instant action and that the count of the petition wherein plaintiff seeks to set aside the divorce decree is merely preliminary to the establishment of her rights in the property of decedent as his widow.

█ The real issue to be determined upon this appeal is whether plaintiff's petition states a claim upon which the relief prayed for can be granted. In that connection we note that "It is well settled that a motion to dismiss a petition admits, for the purpose of the motion, the truth of all facts well pleaded therein and any inferences fairly deducible from the facts stated, and we construe the petition favorably to the plaintiff giving him the benefit of every reasonable and fair intendment in view of the facts alleged. * * * The question presented is whether the facts stated invoke the application of principles of substantive law which would entitle plaintiff to the relief he seeks." Jacobs v. Jacobs, Mo.Sup., 272 S.W.2d 185, 188. However, a motion to dismiss does not admit conclusions of law or the conclusions of the pleader on the facts. Therrien v. Mercantile-Commerce Bank & Trust Co., 360 Mo. 149, 227 S.W.2d 708.

In the first count of the petition it is alleged that plaintiff and Roy Hemphill were married on December 25, 1916, and thereafter lived together as husband and wife in the State of Oklahoma; that on January 8, 1926, the county court of Ottawa County, Oklahoma, made an order declaring plaintiff to be insane and ordered that she be committed to the Eastern Oklahoma Hospital in Venita, Oklahoma; that plaintiff is now and has continuously since said date been kept as a public patient in said hospital.

It is alleged that on December 16, 1941, Roy Hemphill filed a petition for divorce against plaintiff herein in the circuit court of Jasper County, Missouri; that after appointment of a guardian ad litem, a purported decree of divorce was entered therein on January 10, 1942, but that said decree was declared to be void because of insufficient service. The defendants concede that the decree in the foregoing case was void and hence we will make no further reference to that cause.

The petition further alleges that on March 4, 1942, Roy Hemphill filed a petition for divorce in the circuit court of Jasper County, Missouri, against this plaintiff; that on April 13, 1942, the court appointed a guardian ad litem for defendant therein (plaintiff here) and said guardian ad litem filed an answer to said petition on April 14; on April 16, 1942, the court entered a decree granting said Roy Hemphill a divorce from plaintiff herein, which said decree is alleged to be null and void for reasons specified in the petition. It is alleged that the averments in the petition for divorce were that Roy Hemphill and plaintiff resided together as husband and

wife until January 1922; that said husband faithfully demeaned himself and discharged his marital duties but that plaintiff herein offered indignities which rendered his condition in life intolerable.

In paragraph 8 of the instant petition plaintiff alleges that the divorce decree was null and void for one or more of the following reasons:

(a) That the allegations in the petition and the statements in the affidavit thereto and testimony of the witnesses in said cause were false and untrue.

(b) That the allegation in said petition that Roy Hemphill and plaintiff lived together as husband and wife until January 1922 was false as said parties, in truth and fact, lived together until the time plaintiff was committed to the hospital in January 1926.

(c) That the petition failed to allege, and the testimony failed to prove, that plaintiff herein was not insane at the time she allegedly committed the indignities averred.

(d) That if plaintiff did the things alleged as purported indignities in the petition for divorce said acts were done and performed while plaintiff was insane and at a time when said Hemphill knew she was insane; that failure of said Hemphill to plead and testify to said fact was a fraud upon the court and said conduct constituted a false and fraudulent attempt to make insanity a ground for divorce in this state.

(e) It is further alleged that the guardian ad litem appointed by the court to represent the present plaintiff in said divorce action failed to communicate with plaintiff or with any of her relatives or friends, and failed "to make any investigation whatsoever concerning the facts or circumstances in the matters either before preparing and filing the purported answer or before permitting the cause to be tried and go to judgment," and that said guardian ad litem failed to notify plaintiff herein, or any of her relatives or friends, as to the time when said cause was to be taken up, heard and tried by the court, and that said guardian ad litem, in his purported capacity as such, was "not in truth and in fact acting for and in the interest of this insane plaintiff but was acting solely in accommodation of the said Roy Hemphill and his counsel in said action"; that by reason of the foregoing, "plaintiff was unlawfully and fraudulently deprived of due process and certain remedy for her rights in said cause, and said proceeding constituted a fraud upon this plaintiff."

(f) It is further alleged that the purported service of process upon plaintiff herein was made contrary to law and the court acquired no jurisdiction over her person.

(g) That said Roy Hemphill failed to allege and prove that if the plaintiff herein did commit the alleged indignities, said actions on her part were fully condoned by the continued cohabitation of said parties as husband and wife from the date of their marriage until the date plaintiff was incarcerated in the hospital, and that said omissions constituted a fraud upon the court and upon this plaintiff.

(h) It was further stated that the divorce petition alleged, and testimony in said case purported to prove, that Roy Hemphill was the innocent and injured party and was of good moral character, when in truth and in fact he had lived for many years in Jasper County, Missouri, in a state of open and notorious adultery, and that his allegations and proof to the contrary constituted a fraud upon the court and upon this plaintiff.

It is next alleged that Roy Hemphill died in Jasper County, Missouri, on December 12, 1955.

It is unnecessary to specify in detail the allegations in Count II. It alleges by adoption all of the allegations in Count I of the petition. It further alleges that defendant Rosa Mae Hemphill, subsequent to 1942, purported to become the wife of Roy Hemphill and now claims to be his widow,

and was appointed adminstratrix of his estate on December 19, 1955. It is next alleged that certain children were born of the marriage between plaintiff and Roy Hemphill; that at the time of his death said decedent owned certain real estate in Jasper County, Missouri, and that certain defendants claim some interest in said real estate. It is further alleged that defendant Rosa Mae Hemphill, as administratrix, has failed to make an accounting and inventory of the assets of the Roy Hemphill estate and has disposed of certain personalty belonging to said estate, and is concealing other assets. Said count concludes with the prayer that defendant Rosa Mae Hemphill be required to account for all the property belonging to the estate of Roy Hemphill, deceased; that she be enjoined from concealing and conveying the assets of said estate; that the court enter a decree establishing the right, title and interest of plaintiff and defendants in the real estate owned by said Hemphill at the time of his death; and that the decree establish the interest of plaintiff and the defendants in and to the personalty and other assets owned by said Hemphill at the time of his death, and for other relief.

■ It should be noted that this is an equitable action in which plaintiff, by direct attack, seeks to set aside the decree of divorce on the alleged ground of fraud in the procurement thereof. In considering the sufficiency of the petition, we will disregard certain allegations which are obviously conclusions of law or fact. It should also be noted that a number of the allegations seek to base fraud upon the alleged false allegations in the divorce petition, the affidavit thereto, and the false testimony in support thereof. Those allegations are not sufficient to warrant the relief sought. "It is true that courts of equity have set aside judgments for divorce because of fraud in the procurement thereof, but as stated in Jones v. Jones, Mo.App., 254 S.W.2d 260, 261, that fraud must have been extrinsic or collateral to the matters

which either were or could have been presented or adjudicated in the original proceeding and must not be 'merely intrinsic in the sense of having pertained to the merits of the cause upon which the judgment of the court was rendered.' See also Grages v. Grages, Mo.App., 184 S.W.2d 749 [1]; and Crain v. Crain, Mo.App., 205 S.W.2d 897 [2]. It has repeatedly been held that false swearing and false averments in the pleadings do not give rise to an action in equity to set aside a judgment for fraud." McCarty v. McCarty, Mo.Sup., 300 S.W.2d 394, 400.

■ The allegation that the condonation was concealed from the court in the divorce action does not aid plaintiff herein. Any condonation would have been purely a matter of defense, and any concealment thereof in the divorce case was not a matter extrinsic or collateral to the issues therein and was precluded by the decree in that case. Jones v. Jones, Mo.App., 254 S.W.2d 260.

■ Plaintiff alleged that if she committed the acts which were alleged in the divorce petition to be indignities she was insane at the time said acts were done. If that allegation is true such acts were not indignities which would afford a basis for divorce. It has been recently said that "if his mental condition was such that he was incapable of wilful and deliberate conduct and could not differentiate between right and wrong with respect to the acts which he committed, his acts were involuntary and he is to be excused from the legal consequences which would follow if he were sane." Niedergerke v. Niedergerke, Mo. App., 271 S.W.2d 204, 207.

■ However, the burden was not upon Roy Hemphill as plaintiff in the divorce case to prove that his wife was sane at the time the alleged indignities were committed. Sanity is presumed prior to an adjudication or until evidence of insanity is introduced. The burden was upon the guardian ad litem for the defendant

wife (plaintiff here) to plead and prove, as a defense in that action, that she was insane at the time the alleged indignities were committed. Schuler v. Schuler, Mo. App., 290 S.W.2d 192.

As indicated, none of the allegations heretofore considered would constitute a sufficient basis for granting the relief here sought. However, we are seriously concerned with the allegations (which we must accept as true) as to the manner in which the guardian ad litem performed (or failed to perform) his duties. As stated, it is alleged that the guardian ad litem failed to communicate with his ward or any of her relatives or friends or to notify any of such persons as to when the cause was to be heard; that he failed to make any investigation whatsoever concerning the facts and circumstances involved; and did not act in the interest of his insane ward but solely in accommodation of Roy Hemphill and his counsel.

■ The guardian ad litem for an insane defendant should be more than a mere figurehead. The appointment of such a guardian is not a bare technicality and the office involves more than perfunctory or shadowy duties. In most instances a guardian ad litem may not discharge his duties by merely filing a formal answer requiring the plaintiff to prove the allegations of his petition. He is required to take all steps reasonably necessary to protect and promote the interests of his ward in the litigation. In a case such as the divorce proceeding in question the guardian ad litem (an attorney) should have made an investigation of the facts and the law applicable thereto, and he should have filed an answer setting up all defenses (including the affirmative defense that his ward was insane at the time of committing any acts that were alleged to be indignities) that could have been supported by substantial evidence. In the preparation and trial of the case he should have exhibited the same (if not greater) attention and vigilance in defense of the action as he would have

employed on behalf of a sui juris defendant who has privately engaged him as counsel. For cases discussing the duties of a guardian ad litem, see Spotts v. Spotts, 331 Mo. 917, 55 S.W.2d 977, 87 A.L.R. 660; Kennard v. Wiggins, 349 Mo. 283, 160 S.W.2d 706; Cox. v. Wrinkle, Mo. Sup., 267 S.W.2d 648; Niedergerke v. Niedergerke, supra.

It is obvious from the allegations of the petition that the guardian ad litem in the instant divorce case did not fairly and adequately represent his ward. He could not have made an intelligent and effective defense without having conducted a reasonable investigation of the facts. It is alleged he made none at all. The most fertile source of information would likely have been his ward (if mentally able to discuss the matter at all) or her relatives and friends. It is alleged he made no contact with any of them. Moreover, it is alleged that he did not act in the interest of his ward but solely for the accommodation of Roy Hemphill and his counsel. When used in describing the conduct of a lawyer-guardian ad litem in a legal proceeding, that allegation is not a mere conclusion but imports factual inferences that should be easily understood.

■ If plaintiff had alleged that no guardian ad litem had been appointed for her, or if one appointed had failed to accept the appointment or file an answer, the petition would have stated a claim for relief. Graves v. Graves, 255 Mo. 468, 164 S.W. 496; Reineman v. Larkin, 222 Mo. 156, 121 S.W. 307. The mere filing of an answer, and nothing more, as indicated by the instant allegations, in accordance with the legal requirements, did not aid the defendant-ward but, in fact, facilitated the entry of the decree. The allegations of the petition would indicate that the defendant-ward had a good defense to the divorce suit. Under the facts and circumstances alleged, we hold that the failure of the guardian ad litem to properly represent his ward in the divorce case constituted a

fraud upon the court and the defendant therein, and his pretended defense was not such a compliance with the legal requirements as to bar the relief sought by plaintiff in the instant action. Jones v. Arnold, 359 Mo. 161, 221 S.W.2d 187; Wirth v. Weigand, 85 Neb. 115, 122 N.W. 714, 35 L.R.A.,N.S., 1103; Kennard v. Wiggins, supra. It is our conclusion that the petition states a claim upon which the relief sought could be granted and it follows that the court erred in sustaining the motions to dismiss.

The judgment is reversed and cause remanded.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.