## WILLIAM J. RYDER v. CORA B. RYDER.

WINDHAM COUNTY, FEBRUARY TERM, 1892.

BEFORE : ROSS, C. J., TYLER, MUNSON AND THOMPSON, JJ.

*Annulment of marriage. Fraud. Physical incapacity. Condonation. Unreasonable delay.*

1. If the wife, at the time of contracting the marriage relation, conceals from her husband the fact that she has chronic and incurable syphilis, it will amount to a fraud for which the marriage may be annulled under R. L., s. 2349.

2. Upon a petition for the annulment of a marriage on this ground the county court found that the wife had syphilis at the time of the marriage, but did not find whether she had

or had not knowledge of that fact, and refused to annul the marriage. *Held*, that upon exceptions by the petitioner the supreme court would not presume that the wife had knowledge of her condition in order to reverse the judgment.

3. Chronic and incurable syphilis, which renders the wife incapable of bearing healthy children, and which makes it impossible for the husband to have sexual intercourse with her without great danger of contracting the disease himself, is such physical incapacity as will afford a ground for annulling the marriage under R. L., s. 2349.

4. There can be no condonation of such a cause for dissolving the marriage relation.

5. The husband had no knowledge of the condition of his wife at the time of contracting the marriage relation. Immediately upon discovering her condition he procured the assistance of a physician and supposed that she was substantially cured by his treatment. He did not learn the contrary until one year and four months after their marriage, when a child was born, and from that time he refused to cohabit with her, and immediately brought the petition for the annulment of the marriage. *Held*, that there was no unreasonable delay.

Petition for annuling a marriage upon the ground that the consent of the petitioner to the marriage was obtained by fraud and that the petitionee was, at the time of contracting the marriage, physically incapable of entering into the marriage state. Heard at the September term, Windham county, 1891, ROWELL, J., presiding. Upon the facts found the court dismissed the petition and the petitioner excepted. The opinion states the case.

*Waterman, Martin & Hitt* for the petitioner.

By concealing her condition from the petitioner the petitionee was guilty of such fraud in obtaining his consent to the marriage that it should be annulled. *Reynolds* v. *Reynolds*, 3 Allen 605; *Barnes* v. *Weyeth*, 28 Vt. 41; 1 Bish. Mar. and Div., s. 197; *Keyes* v. *Keyes*, 22 N. H. 553.

The petitionee, at the time of the marriage was, within

the true meaning of the statute, physically incapable of entering into the marriage state. Properly speaking she could neither have sexual intercourse with her husband nor bear children. *Deane* v. *Aveling*, 1 Robertson 279, 298 ; Sheld. Mar. and Div., 202 ; 1 Fras. Dom. Rel., 53 ; 1 Bish. Mar. and Div., ss. 324, 332, 333 ; *Le Barron* v. *Le Barron*, 35 Vt. 365 ; *Bascom* v. *Bascom*, 25 N. H. 271.

ROSS, C. J.   This is a petition for annuling a marriage upon the grounds, first, that it was procured by fraud, and, secondly, that the petitionee was physically incapable of entering into the marriage state.   R. L., 2349, provides that

"The marriage contract may be annulled when, at the time of the marriage, either party  *  *  *  was  *  *  * physically incapable of entering into the marriage state, or when the consent of either party was obtained by force or fraud."

It is found that,

"At the time of this marriage the petitionee had chronic syphilis which was incurable ;  that at this time he supposed her to be chaste ;  that in about two months she communicated the disease to him ;  that they then both consulted a physician who treated them some time, when she got better ; that he believed from that time until the child was born she had got well of the disease and would not be troubled with it again ; that he did not know she had disease until she communicated it to him ;  that he voluntarily cohabited with her both before and after he knew of her disease ; that a child was born to them about a year and four months after the marriage ;  that the child was a mass of syphilitic sores, attributable to the condition of the mother, and soon died ; that at the birth of the child and afterwards the mother was in about the condition of child from such sores ;  that he never had intercourse with her after the birth of the child, and that at no time could he have sexual intercourse with her without great danger of contracting the disease."

Upon these facts the question is whether the trial court was in error in refusing to annul the marriage.   A majority of the court think it was.   It is not found that the petitionee

was fully aware of her condition at the time of the marriage. This court cannot presume she was, to find error in the judgment of the trial court. It has made no finding on that subject. This court would presume she was not, rather than otherwise, to uphold the judgment of the trial court. If it were found that she was fully aware of her condition, she would have been guilty of a fraudulent concealment in not disclosing it to the petitioner. It would be an essential fact, entirely within her knowledge, not within his, nor open to his observation, nor to his inquiry, upon any reasonable principles which do, or should prevail in conducting the negotiations which lead up to entering into the contract of marriage. It would be both indelicate and offensive to enter upon such inquiries. In such a case, if she did not care to disclose her condition she should have declined his advances. While there was no malformation which rendered complete sexual intercourse impossible, there was a physical condition that rendered her incapable of healthy coition. Every such act, by reason of her physical condition, was attended with great danger of communicating to him incurable disease, a disease endangering his health and life. Under similar statutes, it has been held that the physical incapacity need not be a total incapacity, nor a malformation; that it may consist of such sensitiveness, from whatever cause, on the part of the wife, as would make intercourse endanger her health or life. In Brown on Divorce, 184, it is said:

" It is an accepted rule that, if from some incurable physical or psychic defect of one party to the marriage, sexual intercourse with the other party is impossible in a complete and natural manner, or *impracticable*, without the use of violence or *danger to health*, and if the defect existed at the date of the marriage unknown to the complainant, on application and upon strict proof of the facts, the marriage will be declared void *ab initio*, unless there has been insincerity or unreasonable delay."

To the same in legal effect is *Davenbagh* v. *Davenbagh*, 5 Paige 554; 3 L. Ed. 827 and note; S. C. 28 Am. Dec. 448 and note; *Newell* v. *Newell*, 9 Paige 25; 4 L. Ed. 596 and note; 1 Bish. on M. and D. (2d Ed.), ss. 766, 777, 789. It is frequently said, as in Brown on Divorce, 184, that "impotence is such an incurable, sexual incapacity as admits of neither copulation nor procreation." But this language must be taken with limitations, for it is followed by: "It may arise from malformation or frigidity of constitution, or from any other physical defect in the organs of generation." In the case at bar the petitionee's organs of generation, at the time of marriage, were in an incurably deceased condition, which, while it did not physically render her incapable of copulation or of bringing into life a child, a mass of syphilitic sores, as good as dead when born, yet did render copulation and procreation on the part of the petitioner impracticable, because the act endangered both his health and life. The facts found bring the case within the reason and essence, if not within the exact language of the rule. There could be no condonation of such a cause. It existed continuously. There was no unreasonable *delay*. The petitioner ceased to cohabit or live with her as soon as he was informed of her real condition, and that it was incurable.

*Judgment reversed and judgment annuling the marriage.*